UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH JONES,

        Plaintiff,

    v.

KRISTI NOEM,
*Secretary of Homeland Security*,

        Defendant.

Case No. 22-cv-2503-MJS

## MEMORANDUM OPINION

A few years back, Plaintiff Keith Jones was keenly interested in landing a new job with his then-employer, the United States Secret Service ("Secret Service"). In late 2017, he applied for seventeen promotional vacancies, without success. In early 2018, he applied for another four vacancies. That time around, the Secret Service selected Jones for one of the posts: Resident Agent in Charge of the Pretoria Office in South Africa. But Jones was unassuaged. Alleging that all the Secret Service's non-selection decisions were discriminatory based on his race (African American)—and that the 2018 non-selection decisions were both racially discriminatory and retaliatory—Jones sued under Title VII of the Civil Rights Act of 1964 ("Title VII"). Following discovery, the Secret Service now seeks summary judgment on Jones's claims. Because no reasonable jury could conclude that any of the Secret Service's non-selection decisions were motivated by racial discrimination or retaliation, the Court **GRANTS** the Secret Service's motion.

**BACKGROUND**

The following facts are either undisputed or construed in favor of Jones as the non-moving party. Fed. R. Civ. P. 56(a); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).[1]

Jones first joined the Secret Service in 1999. (ECF No. 30-1, Def.'s Stmt. of Material Facts ("Def.'s Stmt.") ¶ 2.) As relevant here, beginning in January 2014, Jones held the job of Assistant to the Special Agent in Charge of the Honolulu Field Office—a GS-14 level position—and he remained in that assignment for nearly two years, until November 2016. (*Id.* ¶ 3.) Jones then spent approximately nine months as Resident Agent in Charge of the Moscow Resident Office—likewise a GS-14 level position—between November 2016 and August 2017. (*Id.* ¶ 4.) From there, when the Secret Service closed the Moscow office in August 2017, Jones returned to his GS-14 role as Assistant to the Special Agent in Charge of the Honolulu Field Office. (*Id.* ¶ 5.)

Soon after, Jones began applying for internal promotions to the GS-15 level. (Def.'s Stmt. ¶ 6.) During the final promotional cycle of 2017, Jones bid on seventeen different GS-15 vacancy announcements, encompassing various Special Agent in Charge or Assistant Special Agent in Charge postings throughout the United States and around the world. (*Id.* ¶ 12.) The promotional process was governed by the Secret Service's Merit Promotion Plan. (*Id.* ¶¶ 6–7.) As part of the

---

[1] Under our Local Rules, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). The Secret Service filed a statement of materials facts in keeping with Local Rule 7(h), and Jones filed a responsive statement. (ECF No. 30-1; ECF No. 31-1.) Notably, Jones expressly does not controvert most of the Secret Service's facts and introduces only two new proffered facts of his own. (ECF No. 31-1.) Accordingly, the Court treats the Secret Service's unchallenged facts as undisputed for purposes of resolving this motion. *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) ("[I]f one party presents relevant evidence that another party does not call into question factually, the court must accept the uncontroverted fact."). The only exception is Jones's attempt to dispute the Secret Service's Paragraph 18, which states that certain selecting officials were unaware of Jones's race at the time of their recommendations and/or selections. (*Compare* ECF No. 30-1 ¶ 18, *with* ECF No. 31-1 ¶ 1.) Even assuming Jones created a genuine dispute on that one point, it is immaterial to the Court's analysis.

Merit Promotion Plan, one of the policies applicable to GS-15 promotions—a policy the Secret Service applied to that promotional cycle—provided that "GS-14 special agents will not be considered for … promotion to the GS-15 level unless they have been assigned to their current GS-14 position for eighteen months at the time that a bid list/vacancy announcement closes." (*Id.* ¶¶ 8, 13.) When the bid cycle closed in November 2017, Jones had only been in his then-current GS-14 assignment for about two months. (*Id.* ¶ 14.) Jones was not selected for any of the seventeen GS-15 vacancies he bid on. (*Id.* ¶ 16.) According to the Secret Service, Jones did not meet the requirements for any GS-15 vacancy at the time because he had not served in his then-current GS-14 assignment (in Honolulu) for at least eighteen months. (*Id.* ¶¶ 15, 16.)

Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor in January 2018, and he filed a formal EEO complaint in February 2018, alleging that the Secret Service's non-selection decisions were racially discriminatory. (Def.'s Stmt. ¶¶ 21–23.)

During the first bidding cycle of 2018, Jones bid on four additional positions under the Merit Promotion Plan: (1) Assistant to the Special Agent in Charge in the Hague Resident Office (Vacancy #18039); (2) Resident Agent in Charge in the Hague Resident Office (Vacancy #18013); (3) Resident Agent in Charge in the Sofia Resident Office (Vacancy #18023); and (4) Resident Agent in Charge in the Pretoria Resident Office (Vacancy #18022). (Def.'s Stmt. ¶ 25.) After the process closed, the Secret Service selected Jones for the Pretoria posting. (*Id.* ¶ 27.) By virtue of his selection for that posting, Jones was not—and could not have been—simultaneously selected for any of the other three vacancies. (*Id.* ¶¶ 29–30.)

After being officially notified about his selection for the Pretoria posting in April 2018, Jones amended his formal EEO complaint to add new claims; Jones alleged that the Secret

3

Service's non-selection decisions on the other three vacancies he pursued in 2018 were both racially discriminatory and retaliatory based on his prior EEO activity. (*Id.* ¶ 32.)

In October 2020, the agency issued a final decision in the Secret Service's favor on Jones's EEO claims. (*See* ECF No. 30-4.) Jones appealed, and the Equal Employment Opportunity Commission affirmed the agency decision in May 2022. (ECF No. 30-9.) Jones then filed this lawsuit in August 2022. (ECF No. 1.) Through his operative complaint, he brings race discrimination claims stemming from all the 2017 non-selections, and race discrimination and retaliation claims stemming from the subsequent 2018 non-selections (as to the three positions Jones pursued but was not offered). (ECF No. 17.) Following discovery, the Secret Service now moves for summary judgment. The matter is fully briefed and ripe for decision. (ECF No. 30 ("Def.'s Mem."); ECF No. 31 ("Pl.'s Opp'n"); and ECF No. 32 ("Def.'s Reply").)

## ANALYSIS

### I.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact exists if the evidence, viewed in a light most favorable to the nonmoving party, could support a reasonable jury's verdict for the nonmoving party." *Figueroa v. Pompeo*, 923 F.3d 1078, 1085 (D.C. Cir. 2019) (citation and quotation marks omitted). In carrying out this analysis, the Court does not "weigh the evidence and determine the truth of the matter but instead determine[s] whether there is a genuine issue for trial." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (citation and quotation marks omitted). "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d

709, 713 (D.C. Cir. 2017). "In response, the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id.*

### II.     Legal Framework

"Title VII prohibits federal agencies from discriminating against their employees on the basis of race, color, religion, sex, or national origin," *Johnson v. Perez*, 823 F.3d 701, 706 (D.C. Cir. 2016) (citing 42 U.S.C. § 2000e-16(a)), and "forbids retaliation against an employee" who has "'made a charge' under Title VII," *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). "Title VII claims may be proven by direct or circumstantial evidence[.]" *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020).[2] In cases predicated strictly on indirect evidence, as here, courts employ the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016); *Allen*, 795 F.3d at 38–40. Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation. *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). Then "the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Id.* at 1092. Finally, the burden reverts to the plaintiff to show "the employer's stated reason for its actions was in fact pretext for unlawful discrimination" or retaliation. *Wheeler*, 812 F.3d at 1114; *Allen*, 795 F.3d at 39.

Because the burden-shifting framework aims to "progressively sharpen the inquiry into the elusive factual question of intentional discrimination" or retaliation, the D.C. Circuit has endorsed a "shortcut" through the back-and-forth steps. *Figueroa*, 923 F.3d at 1086–87 (citation and

---

[2] Direct evidence "usually takes the form of a 'statement that itself shows ... bias against a protected class in the employment decision.'" *Oviedo*, 948 F.3d at 394 (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013)) (cleaned up). Jones does not claim to rely on any direct evidence here.

5

quotation marks omitted). If the employer properly presents a legitimate non-discriminatory or non-retaliatory reason, a court "'need not—*and should not*—decide whether the plaintiff actually made out a prima facie case'" at step one. *Id.* at 1087 (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)). Instead, a court should focus on the "central question" of "whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee.'" *Walker*, 798 F.3d at 1091 (quoting *Allen*, 795 F.3d at 39); *Oviedo*, 948 F.3d at 395 ("Where there has been an adverse employment action and the employer asserts a legitimate, non-discriminatory and non-retaliatory reason for the decision, we focus on pretext."). In considering that question, a court does not "sit as a super-personnel department that reexamines an employer's business decisions," meaning it "may not second-guess an employer's personnel decision absent demonstrably discriminatory [or retaliatory] motive." *Wheeler*, 812 F.3d at 1114 (citations and quotation marks omitted); *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (explaining that the focus "is not the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers").

With this framework in mind, the Court considers Jones's two sets of claims in turn.

### III. The 2017 Non-Selection Decisions

Start with Jones's discrimination claims based on his 2017 non-selections. The Secret Service presses a few different arguments in pursuit of summary judgment. It first argues that Jones cannot even establish a *prima facie* case as to several vacancies, partly because certain selecting officials were unaware of his race and partly because some of the vacancies were not filled by any candidates at all. (Def.'s Mem. at 10–13.) Beyond that, the Secret Service argues that Jones cannot

6

show that its legitimate, nondiscriminatory reason for his non-selections—*i.e.*, that Jones was ineligible because he had not served in his GS-14 assignment for at least eighteen months at the time—is false and a pretext for unlawful discrimination. Because the Court agrees with the latter argument, it need not reach the first. *Figueroa*, 923 F.3d at 1087; *Brady*, 520 F.3d at 494.

The Secret Service proffers a straightforward and broadly applicable explanation for why it did not select Jones for any of the 2017 vacancies: Jones was ineligible for any GS-15 promotion under Secret Service policy because he had only been in his then-current GS-14 position for about two months at the time. (Def.'s Stmt. ¶¶ 13–16.) The relevant policy—which indisputably applied to the promotional process during that 2017 bidding cycle (*id.* ¶ 13; ECF No. 31-1 ¶ 2)—stated that "GS-14 special agents will not be considered for … promotion to the GS-15 level unless they have been assigned to their current GS-14 position for eighteen months at the time that a bid/list vacancy announcement closes." (Def.'s Stmt. ¶ 8.) Jones does not contest the Secret Service's assertion that when the applicable bidding cycle closed in November 2017, he had only been in his then-current GS-14 position for about two months. (Pl.'s Opp'n at 10 ("Plaintiff does not assert that he served eighteen (18) months in a GS-14 position.").) Accordingly, the Secret Service explains, Jones was not eligible for a promotion to the GS-15 level and was not selected for any of the GS-15 level vacancies he pursued in 2017 on that basis. (*Id.* ¶¶ 15–16.) Against that record, it becomes Jones's burden to adduce evidence that would allow a reasonable jury to find that the Secret Service's explanation is false and a pretext for discrimination. *See Walker*, 798 F.3d at 1092.

To that end, Jones presses—or at least hints at—a few different theories. Jones first asserts that the Secret Service "could excuse or revise [its] supposedly required criteria," characterizing the eighteen-month policy as a "guideline" rather than a "requirement." (Pl.'s Opp'n at 10.) But

without any evidence that the Secret Service did, in fact, excuse or waive the policy for any other candidate during that promotional cycle, Jones is simply speculating. At most, Jones asserts that "another white candidate" had the eighteen-month requirement waived. (*Id.*) Drilling down, though, Jones does not point to any competent evidence to support that assertion. Jones cites only his own deposition testimony, where he stated that he "believe[s]" another employee named Kenneth Graf "didn't meet the [eighteen] months in his second GS-14 assignment"; but in response to a follow-up question, Jones admitted that he did not have any evidence to support his belief. (*See* ECF No. 30-3, Jones Dep. at 35:10–36:10.) Jones's mere beliefs and speculation cannot create a genuine dispute at summary judgment; he needs evidence to do that. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 611 (D.C. Cir. 2010) ("The possibility that a jury might speculate in the plaintiff's favor is insufficient to defeat summary judgment.") (quoting *Haynes v. Williams*, 392 F.3d 478, 485 (D.C. Cir. 2004)). More, Jones does not point to any evidence showing that Mr. Graf even bid on any of the GS-15 vacancies in the 2017 bidding cycle, much less that Mr. Graf was selected for a GS-15 vacancy in 2017 with the help of a waiver from the Secret Service's eighteen-month GS-14 assignment policy. In fact, the record seems to foreclose those possibilities considering that Mr. Graf was instead selected for one of the other 2018 vacancies that Jones pursued—Assistant to the Special Agent in Charge in the Hague Office (Vacancy #18039)—as a *reassignment* at the GS-14 level, not as a *promotion* to the GS-15 level. (*See* Def.'s Mem. at 28; ECF No. 30-13, Def.'s Ex. 12 at 13; ECF No. 30-17, Def.'s Ex. 16 at 3–4.)

Otherwise, alongside his waiver theory, Jones gestures at an alternative argument that even if the eighteen-month policy were generally applicable, it provides for three exceptions by its own terms. (Pl.'s Opp'n at 10.) But beyond that skeletal assertion, Jones does not specify which exception(s) to the eighteen-month policy he suggests the Secret Service should have considered,

and he certainly does not develop any concrete argument as to why. This comes up short. *Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work[.]'") (quoting *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019)); *see also Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 13 n.9 (D.D.C. 2021), *aff'd*, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022).[3]

In sum, the undisputed record evidence before the Court reflects that the reason the Secret Service did not select Jones for any of the GS-15 vacancies he pursued in 2017 is because he did not satisfy the generally applicable policy criterion of having served in his then-current GS-14 role for at least eighteen months. Because Jones fails to adduce any competent evidence that would allow a reasonable jury to reject that explanation as false and pretextual, the Secret Service is entitled to summary judgment on Jones's discrimination claims as to the 2017 non-selections.

### IV. The 2018 Non-Selection Decisions

That leaves Jones's discrimination and retaliation claims tied to the three 2018 vacancy non-selections. Recall that Jones bid on four separate vacancies at the same time in March 2018, as part of the same bidding cycle, and the Secret Service selected Jones for one of those vacancies: Resident Agent in Charge of the Pretoria Office. In other words, even though Jones was awarded

---

[3] Although the "Court is not in the habit of doing parties' lawyering for them," *Jeffries v. Barr*, 965 F.3d 843, 860 (D.C. Cir. 2020), the Court nevertheless considered the policy's exceptions. The policy provides that the "minimum assignment period of eighteen months does not apply to: [1] a special agent whose reassignment from a GS-14 position is in any part based on performance, misconduct, hardship, reasonable accommodation, the health needs of the special agent, or the physical demands or requirements of a position; [2] when the special agent has already served in two GS-14 assignments, each for a period of eighteen months or greater; or [3] when the Secret Service has a specific and documented need to promote or reassign a special agent from the position." (ECF No. 30-6, Def.'s Ex. 5 at 1.) The Court sees nothing to suggest that the first or third exceptions would be even arguably implicated. For purposes of the second exception, as the Secret Service points out, although Jones had served in two prior GS-14 assignments, he did not satisfy the eighteen-month tenure requirement in both posts. (Def.'s Mem. at 23.) In other words, there is no evidence in the record to suggest that Jones even qualified for an exception, much less that the Secret Service denied Jones an exception in a manner that would suggest racial discrimination.

one of the four positions he simultaneously pursued, and even though Jones indisputably could not have been selected for—much less filled—all four postings at the same time, Jones contends that the Secret Service engaged in discrimination and retaliation by selecting him for one position but not the other three. Jones claims adversity by asserting that he ranked the four positions in order of preference, with the Pretoria post as his last choice. (Pl.'s Opp'n at 11.)

The Secret Service seeks summary judgment on this set of claims on two main grounds. To start, it argues that Jones cannot show that the Secret Service's non-selection decisions were adverse employment actions sufficient to establish a *prima facie* case, including because there is no dispute that Jones could not have been selected for or served in more than one position at the same time. Beyond that, the Secret Service proffers non-discriminatory and non-retaliatory reasons explaining why it selected other applicants for the three vacancies at issue, at the same time it selected Jones for the Pretoria posting, and it argues that Jones cannot adduce evidence to show these explanations to be pretextual. Once again, because the Court agrees with the latter argument, it does not reach the first. *Figueroa*, 923 F.3d at 1087; *Brady*, 520 F.3d at 494.[4]

The Secret Service's submissions explain it selected other candidates for the other three vacancies because the selecting official believed those other candidates "had special experiences that made them particularly well-suited to serve in the respective positions." (Def.'s Mem. at 26.) Put another way, the Secret Service believed the other candidates were "qualitatively superior" for the roles they were selected to fill. (*See id.*; *see also* Def.'s Stmt. ¶ 31; ECF No. 30-13, Def.'s Ex.

---

[4] That said, Jones's response could be read to concede that the 2018 non-selections were not adverse employment actions: "Plaintiff does admit that, at this point, the record if devoid of any information/evidence that his selection to his last preference is indicative of an adverse employment action." (Pl.'s Opp'n at 11.) That is how the Secret Service interprets this statement (Def.'s Reply at 4–5), but its argument relies on an assumption that Plaintiff's use of the word "if" was a typo for the word "is"—*i.e.*, that counsel meant to write "the record *is* devoid," rather than "the record *if* devoid." Since the use of "if" makes little sense in context, the Secret Service's reading is not unreasonable. But ultimately, the Court need not squarely decide that issue because Jones's claims fail at the pretext stage for other reasons.

10

12 at 11–18 (selecting official attesting that he believed the selected candidates were "the best qualified applicants and the best fit for the positions").) More specifically, as to the two vacancies in the Hague Resident Office (#18039 and #18013), the Secret Service's evidence reflects that the selected candidates were chosen, in large part, based on their prior experience with cybercrimes investigations and related expertise. (Def.'s Ex. 12 at 12–14.) And as to the vacancy in the Sofia Resident Office (#18023), the Secret Service's evidence shows that the selected candidate was chosen because of his deep "inspection experience" that, as the selecting official put it, "differentiated [that selectee] from other reassignment candidates." (*Id.* at 15.)

In response to those explanations, Jones musters very little to try to show pretext. He first asserts, in conclusory fashion, that the Secret Service "does not actually provide adequate legitimate … reasons for [his] non-selection." (Pl.'s Opp'n at 11.) It is true that an employer must put forward an "adequate evidentiary proffer" to support its legitimate rationale at the second burden-shifting step—a proffer that includes "a clear and reasonably specific explanation" supported by "admissible" evidence that "a factfinder may consider at trial." *Figueroa*, 923 F.3d at 1087–88. But for the reasons just explained, the Secret Service did so here. And beyond the generic assertion just quoted, Jones fails to develop any concrete argument to the contrary. Second, Jones makes a similarly skeletal argument that "taking all the available evidence," a reasonable jury could find the Secret Service's stated reasons to be pretextual. (*See* Pl.'s Opp'n at 11.) Again, though, Jones fails to develop that one-sentence rejoinder in any meaningful way. He points to no specific evidence for the Court to consider in assessing pretext, fails to explain how any such evidence could support a finding of pretext, and so on. These barebones arguments fall seriously short. *Apprio*, 104 F.4th at 910 ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work[.]'") (quoting *Gov't of Manitoba*, 923 F.3d at

11

179); *Jeffries*, 965 F.3d at 860 ("[The] Court is not in the habit of doing parties' lawyering for them[.]"). Boiled down, Jones's claims premised on the 2018 non-selections rest on conclusory assertions of discrimination and retaliation, which cannot suffice to cast doubt on the Secret Service's proffered non-discrimination and non-retaliatory explanations for its decisions. *See, e.g.*, *Williams v. Verizon Washington, D.C. Inc.*, 304 F. Supp. 3d 183, 199 (D.D.C. 2018).

Because Jones again fails to come forward with evidence that would allow a reasonable jury to find the Secret Service's explanations to be false and a pretext for racial discrimination or unlawful retaliation, summary judgment is warranted on these claims, too.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** the Secret Service's motion for summary judgment in full. The Court will issue a separate order so stating.

Dated: March 4, 2026

MATTHEW J. SHARBAUGH  
United States Magistrate Judge